Argued December 19, 1923, affirmed February 13, 1924.

# PORTLAND BUILDING CO. *v.* STATE BANK OF PORTLAND.

### (222 Pac. 740.)

**Trusts—Rights of Beneficial Owner of Trust Property in Receiver's Hands Stated.**

1. When a receiver holds trust property which belongs to a trust claimant, equity will award the property to the latter; but he must trace the trust property and identify it, and when clearly identified is entitled to have it returned to him if in its original form, or, if changed, to a lien for its value against the property in the hands of the receiver.

**Banks and Banking—Depositor of Trust Funds Mingled With Other Funds of Bank Held Entitled to Lien.**

2. Where a bank agreed with a building company to pay its coupons and bonds as they matured, and the building company deposited money with the bank for that purpose, the bank carrying the amounts deposited and paid in a separate ledger as trust funds, but not keeping them segregated from other moneys in the bank, and on the bank's insolvency the superintendent of banks took over its assets, including the trust funds, and it appeared that the total cash balances of the bank were never reduced below the amount of the trust funds, the building company was entitled to a lien on the whole of the mixed fund for the amount of the trust fund.

---

1. Right to follow trust funds, see notes in 46 **Am. St. Rep.** 608; 15 **L. R. A. (N. S.)** 1100; **L. R. A.** 1916C, 21.   ·

Trusts—Mixture of Trust Funds With Other Funds Does not De-
stroy Trust Character Thereof.

3.   Where trust money is mixed with other money belonging to
the trustee, the trust money does not lose its trust character be-
cause of the mere fact that it is impossible to pick out from the
mass the actual trust money; the trust funds in such case being
treated as constituting a separable part of the entire fund.

From Multnomah: WALTER H. EVANS, Judge.

Department 2.

AFFIRMED.

For appellant there was a brief over the name of
*Messrs Bowerman & Kavanaugh,* with an oral argu-
ment by *Mr. Jay Bowerman.*

`For respondent there was a brief and oral argu-
ment by *Mr. Chris. A. Bell.*

RAND, J.—The State Bank of Portland, which has
since become insolvent, was obligated by contract to
take up and pay, from moneys deposited with it for
that purpose, the coupons and bonds of the Portland
Building Company as they matured and became pay-
able.   Payment of these coupons and bonds was se-
cured by an indenture of mortgage given by the Port-
land Building Company to the Merchants' Savings
and Trust Company, as trustee, and to the duties of
such trustee under said mortgage, the State Bank
of Portland had succeeded.   Sufficient moneys to re-
deem these coupons and bonds as they matured were,
from time to time, deposited by the Portland Build-
ing Company in the State Bank of Portland, and
were paid out by the bank upon surrender and de-
livery of the matured coupons and bonds.   The bank
carried an account of the amounts so deposited and

3.   Following trust funds deposited in mixed bank account of
trustee, see note in 26 **A. L. R.** 15.

so paid in a separate ledger entitled ''Trust and Escrow'' record. This account was not subject to check by the Portland Building Company. Although carried as trust funds, the moneys thus entrusted to the bank for that purpose were not segregated from, but were mixed with, other moneys belonging to the bank. When the superintendent of banks of the state took over the assets of the insolvent bank, the Portland Building Company had on deposit in this account for this purpose the sum of $3,110. In taking over the assets of the bank, the superintendent of banks took into his possession all of the moneys in the bank, including said trust fund and has since refused to recognize the right of the Portland Building Company to have said sum applied in payment of said coupons and bonds.

The Portland Building Company filed its petition in the liquidation proceedings pending in the Circuit Court for Multnomah County, praying that the superintendent of banks be either required to apply said sum in payment of its coupons and bonds or to pay over the same to a trustee to be designated by the Portland Building Company, who should be charged with the performance of that duty. From a decree requiring him to so pay over said sum he has appealed, contending that because the moneys in controversy were mixed with and not kept separately from other moneys which belonged to the bank, the $3,110 is no longer subject to the trust and that the Portland Building Company has no greater right to said sum than that of a general creditor.

Upon the trial and in the argument here it was admitted by the superintendent of banks that from the time the first sum of money was placed in the bank for credit to this account by the Portland Build-

ing Company, up to the very time the superintendent of banks took over the assets of the bank, the State Bank of Portland always had on hand a cash balance in excess of the amount of all trust funds with which it had been entrusted. It is, therefore, an admitted fact that the cash balances of the State Bank of Portland were never at any time reduced below the amount of the trust funds in its possession. Hence, under this admission the trust fund has never been dissipated. The moneys from the fund have never been expended for any purpose except trust purposes, and there is now in the hands of the superintendent of banks $3,110 of these funds.

1. Where it is shown that a receiver has trust property in his hands which did not belong to the insolvent, but belongs to a trust claimant, equity awards the property to the true owner, for otherwise the creditors would receive something to which they are not entitled. In order for the trust claimant to obtain this equitable relief, he must trace the trust property into the hands of the receiver and must identify it either in its original or some changed or substituted form. When clearly identified as forming a part of the assets in the hands of a receiver, the trust claimant, as the beneficial owner thereof, is entitled to have it returned to him if in its original form, and if in some changed or substituted form, then the trust claimant is entitled to have a charge or lien for its ascertainable value against the mass of the property in the hands of the receiver, of which it forms a part. This doctrine was stated by Mr. Chief Justice LORD, speaking for the court in *Ferchen* v. *Arndt*, 26 Or. 121 (37 Pac. 161, 46 Am. St. Rep. 603, 29 L. R. A. 664), in these words: "Before one claiming to be a trust creditor

can be entitled to a lien or preference over other creditors, he must make it appear that the fund or property of the debtor which he seeks to affect with such lien or preference includes the trust property, or the proceeds thereof.''

''As between the *cestui que trust* and trustee and all parties claiming under the trustee otherwise than by purchase for a valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or in its altered state, continues to be subject to or affected by the trust.'' *Pennell* v. *Defell,* 4 De Gex, M. & G. 372, 388; *Standish* v. *Babcock,* 52 N. J. Eq. 628, 630 (29 Atl. 327); 2 Perry on Trusts (6 ed.), § 828, note b. ''The sole question, therefore, in every case where trust property is attempted to be traced, is whether it can be identified, either in the original or altered form.'' *Italian Fruit etc. Co.* v. *Penniman,* 100 Md. 698 (61 Atl. 694, 1 L R. A. (N. S.) 252).

2. Since it is admitted to be a fact in this case that the total cash balances of the State Bank of Portland were never at any time reduced below the amount of the trust funds entrusted to the bank, there could have been no misappropriation of these funds, and as these funds were in the bank when the receiver took possession of its assets and he received from the bank an amount of money which exceeded the amount of the trust funds, the $3,110 in controversy is directly traced into the hands of the bank, and through the bank into the hands of the receiver.

3. The contention that because the trust funds had been mixed by the trustee bank with moneys belonging to it, and because of the further fact that

110 Or.—5

the bank's cash balances had constantly changed as new deposits were made and checks paid, these trust funds could not be traced and identified in the hands of the bank when the superintendent of banks took possession of its assets, and for that reason these trust funds were freed from the trust and are no longer affected by it, cannot be sustained. Where trust money is mixed with other money belonging to the trustee, the trust money does not lose its trust character because of the mere fact that it is impossible to pick out from the mass the actual trust money. In such case the trust funds are treated as constituting a separable part of the entire fund: See 2 Perry on Trusts (6 ed.), § 828 and note, and authorities there cited.

"If specific coins, the proceeds of trust property, are deposited by a trustee in a box, either in his own custody or in that of another person, and in that box are mixed confusedly with coins, in every sense the property of the trustee, and being so mixed are subjected to dealings analogous to the drawings out and payings in of moneys standing in a banker's account, the trust is impressed upon the coins remaining in the box to the full amount of the proceeds of the trust property, if it be that at no time the mixed fund has been reduced below that amount, or if the mixed fund has at any time been reduced below that amount, then to any lesser amount below which it can be shown that the mixed fund has never been reduced." *Knatchbull* v. *Hallett*, 13 Ch. Div. 696, 745.

This principle was recognized in *Shute* v. *Hinman* 34 Or. 578, 581 (56 Pac. 412, 413, 47 L. R. A. 265), where this court, speaking through Mr. Justice BEAN, said: "This is not a case where the trustee has mingled the trust fund with his own and a balance

remains sufficient to satisfy the trust, as in *Knatchbull* v. *Hallett,* 13 Ch. Div. 696.'' See, also, *Board of Commrs.* v. *Strawn,* 157 Fed. 49 (15 L. R. A. (N. S.) 1100, 84 C. C. A. 553); *National Bank* v. *Insurance Co.,* 104 U. S. 54 (26 L. Ed. 658, see also, Rose's U. S. Notes); *Smith* v. *Mottley,* 150 Fed. 266 (80 C. C. A. 154).

The fact that the cash balances of the bank were constantly changing as new deposits were made and checks were paid cannot affect the rights of the *cestui que trust* to reclaim its money, either from the bank or the superintendent of banks, as the amount of the trust fund was at all times clearly ascertainable, and that amount was at all times actually in the bank. The presumption of law is that, in paying checks drawn upon the bank and its other expenses, the bank used its own funds then in the bank, as it was its duty to do, and did not wrongfully use the trust funds in its possession: See 2 Perry on Trusts, § 828; *Board of Commrs.* v. *Strawn, supra; Knatchbull* v. *Hallett, supra.*

Under the admitted facts, this case falls squarely within the rule that where it is clearly shown that the trustee has mingled trust moneys with his own, and the mixed fund has at all times been sufficient in amount to satisfy the trust, the trust claimant has a lien upon the whole of the mixed fund for the amount of the trust fund.

From this it follows that the decree of the Circuit Court must be affirmed.                     AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.