Argued March 21; affirmed July 10; rehearing denied
September 4, 1930

## DOWNING *v.* LANE COUNTY STATE & SAVINGS BANK ET AL.

(290 P. 236)

*M. W. Skipworth* of Marshfield (Goss, Murphy & Skipworth of Marshfield, on brief) for appellant.

*Charles A. Hardy* of Eugene for respondents.

COSHOW, C. J. This controversy is governed by the facts. The law applicable is simple and settled. Did plaintiff authorize said Bergman to invest, loan, collect and reinvest her funds as her agent? The question may be propounded in another way: Was plaintiff represented by her brother, E. S. Downing, authorizing the bank to so handle her funds without further consulting her?

E. S. Downing and said Henry Bergman were business associates and personal friends. Bergman was frequently at the home of said Downing in North Bend. Some of the money belonging to plaintiff, Pauline Downing, was loaned to business institutions owned by the said E. S. Downing and said Bergman. The charge is not made that Bergman was without authority to check on plaintiff's account with said bank for the purpose of investing her money in securities. The evidence that tends to bind the bank for the conduct of said Bergman is the testimony of said E. S. Downing, Stella Downing and Jane Chilson, the latter two being plaintiffs in two other cases of similar import against said bank. The only other evidence is the use of the bank's stationery and the employment, by Bergman in his correspondence, of the personal pronoun "we" instead of "I."

It was not within the scope of Bergman's authority, as executive officer of the banking corporation, to invest and loan money for the bank's depositors with their consent so as to make the bank liable for the acts of its executive officer. The bank's executive officer represents the bank in transacting its business. The scope of his duties does not include that of acting as broker for others. In investing and reinvesting the funds of plaintiff, Bergman was acting for her and not for the bank. There is no pretense that Bergman charged any commission, fee or remuneration in favor of the bank for his services. That it was not within the scope of his authority as executive officer to act for the depositors of the bank as a broker is well-established by the following authorities: *In re Assignment of Bank of Oregon*, 32 Or. 84, 88, 89 (51 P. 87);

*Shute v. Hinman,* 34 Or. 578 (56 P. 412, 58 P. 882, 47 L. R. A. 265) ; *Bryon v. First Nat. Bank,* 75 Or. 296, 299 (146 P. 516) ; *Verrell v. First Nat. Bank,* 80 Or. 550, 555 (157 P. 813) ; *Doerstler v. First Nat. Bank,* 82 Or. 92, 100 (161 P. 386) ; *Haines v. First Nat. Bank,* 89 Or. 42, 48 (172 P. 505) ; *Portland Bldg. Co. v. State Bank of Portland,* 110 Or. 61, 66, 67 (222 P. 740) ; *Miller v. Viola State Bank,* 121 Kan. 193 (246 P. 517, 48 A. L. R. 373).

Plaintiff relies on the cases of Verrell and Carlon and others against the First National Bank of Roseburg. In all of these cases the bank was held liable because its president, without authority, drew money from the accounts of said persons and borrowed it himself. The bank was not held liable because it was acting in the capacity of a broker for the plaintiffs in those cases but because he, as president, withdrew their funds without authority : *In re Assignment of Bank of Oregon,* supra; *Shute v. Hinman,* supra; *Byron v. First Nat. Bank,* supra; *Carlon v. First Nat. Bank,* 80 Or. 539 (157 P. 809) ; *Verrell v. First Nat. Bank,* supra; *Doerstler v. First Nat. Bank,* supra; *Haines v. First Nat. Bank,* supra; *Portland Bldg. Co. v. Bank of Portland,* supra.

■ Plaintiff claims that her deposit was a special deposit; that it was the duty of the bank to keep·it intact and hold the evidences of the investments as a special investment for plaintiff. The evidence shows, however, that the money was put in an ordinary checking account. The money was withdrawn on a simple check and invested from time to time : 3 R. C. L. 518, § 147.

It is unnecessary to detail the evidence. The learned trial judge found that plaintiff deposited her fund as an ordinary checking account, authorized Bergman to invest the fund for plaintiff, and that the bank was not liable for the nature of the investments made. His conclusion was made on the legal principle that in making those investments, Bergman, though the executive officer of the bank, was not transacting the bank's business or representing the bank, but was acting for plaintiff and represented her in making those investments. In that finding we concur because it is supported by convincing evidence.

For that reason the decree is affirmed.

McBRIDE and RAND, JJ., concur.

ROSSMAN, J., absent.